This case is 22-3006, Shields v. Professional Bureau of Collections, and arguing for the appellant is Mr. Thompson. You may proceed. Thank you, Mr. Chief Judge, and may it please the Court. My name is Russell Thompson, and I represent Elizabeth Shields. This appeal raises issues related to a consumer's injury impact for standing under the Fair Debt Collection Practices Act, including what a court should consider at late stages of the case, and when leave to amend should be freely considered. Ms. Shields alleges that the Professional Bureau of Collections of Maryland, who I'll refer to as PBCM, violated sections 1692e2a, e, and ga1 by using false, deceptive, and misleading representations, including as to the balance of the debt, and section 1692cb by unlawfully disclosing the debt to a third party. When looking at intangible harms for standing, we look to see if the asserted harm bears a close relationship to one traditionally recognized at the common law. In doing so, the Supreme Court has given us some guideposts to follow. First, we look at the tort to determine if the necessary elements that give rise to the harm itself. If one's missing, it's not sufficiently similar. Importantly, we don't look to the elements for liability of the tort itself. We're merely looking to the elements that give rise to the harm. Thus, in TransUnion, where the Supreme Court recently addressed standing, the Court found that where TransUnion did not tell anybody that certain class members were terrorists, the harm was not similar to defamation, because the common law harm does not exist but for the dissemination of the information. Second, we look at the type of harm, not the degree of harm. In Lupia v. MediCredit, decided after TransUnion, this Court considered the harm caused by a debt collector's single, unanswered phone call to a consumer after receiving her decent assist letter. That was under a comparison to intrusion on seclusion? Yes, sir. Here at least, since we're at this point, for the claim involving the third party mailers, the argument that was made by the defendant, and I think relevant to the Hunstein case that had a pretty colorful history, that there was the harm, you know, the common law harm was disclosure to the public versus disclosure to a private person or entity, and that that's, you know, different in kind than we had in Lupia, for instance. What's your response to that? Our response is that that's not the key element giving rise to the harm. That's a key element under the tort for liability, but what gives rise to the harm itself is simply disseminating the information, the private information, or put another way, usurping a person's control over their information. But the public dissemination? I mean, to us, you can simply, to me, you can simply look at the analysis in Hunstein. So, for example, in Hunstein, the court recognized that disclosure even to a single person, such as a reporter, could qualify as publicity. But if that single person is not a reporter or some other private person, that somehow the harm differs. And again, this could be a single reporter who does absolutely nothing with that information. Yeah, but here you have the companies hiring a contractor to assist them in debt collection, whether, you know, it could be a law firm. Here you have the mailing service. There could be other, you know, people that you hire to draft letters. Is that really the same thing as, you know, that's just basically part of the business model here? Well, of course it's part of the business model, but that doesn't mean that Congress didn't seek to protect consumers from that. Because again, our position is that the harm being protected at common law, including breach of confidence, which does not require any publicity at all, is usurping somebody's control over their information. If I discover your deepest, darkest secret and tell one person, five persons, a hundred persons, either way, you've lost control over that information, your privacy's been invaded, and you've suffered the same kind of harm, just maybe not to the degree as if it was published in a national newspaper. Are there any on-point cases that apply that doctrine to these types of facts using an independent contractor? Not in the FDCPA context. How about just a common law case? Well, I do have some of that here. I think some of that goes back to maybe the court is referring to the Supreme Court's footnote in TransUnion, where it referenced that at the common law, it hasn't necessarily been recognized. But to us, that's simply the Supreme Court saying that it would not discuss an argument that had already been forfeited, and that was merely dicta. We also believe that it's important because that was a different statute at issue. The FCRA concerned disclosures to people making decisions based on that information. Somebody's offering you a job, somebody's making you credit, such that disclosure to a vendor does not matter. Nobody does any decisions with that information. Did you need to allege that the disclosure of the information was highly objectionable when it was discussed extensively in the Hunstein case and part of the common law tort? Your Honor, I think if we had said that, the Supreme Court would have reached a legal conclusion and the court can't rest on it. The fact that the Supreme Court has said Congress can identify and elevate harms that were previously inadequate is the perfect example of it here. When Congress enacted the section 1692CB, it explicitly identified certain entities and people that can know of the information, including that the consumer has control to decide to consent to anybody to get the information. I guess the question isn't really who did Congress designate to get the information. The question is, is there a private right of action that allows you to sue for damages if they go beyond that? That takes us back to looking at whether there's a common law analog for it, right? Right, and that's why we point to the invasion of privacy towards including... Well, you said public disclosure of private property, as you argued in the district court. Yes, Your Honor. Okay, and as the Chief has pointed out, that typically public disclosure had a meaning that was you had to do it in such a way that it was almost certain that it would become generally known to the public. Yes, almost certain, but not certain. Right, but here, I mean, there's nothing... I mean, what do you point to that this is going to be generally known to the public because this contractor used it to fill in their form letters? Under that argument or that theory, it's almost impossible to ever have a claim for a debt collector disclosing it to a third party, because the debt collector is not necessarily disclosing it to somebody where it can become public information. For example, it prohibits disclosing to your boss. That doesn't give it publicity. That's the example. Those sorts of cases are what the Act contemplates, is calls to neighbors, calls to employers, people in your life to put pressure on you. Create this perception amongst those close to you that you are flawed or a deadbeat, and you see that word thrown around in here, not a third party mailer. Is there any testimony how many clients the third party mailer has? I mean, I know it said that there's no testimony that anyone read it, but I have in my mind this huge stack of mail that's going out where nobody would. The likelihood that somebody from the third party mailer would ever have any connection with Ms. Shields is nil. But the issue is control. Nobody has control over that third party mailing. Presumably that- How does the issue become control? I don't remember any of the common law cases saying we're looking at control. Well, because we're usurping a consumer's or a person's control over their own information. The breach of confidentiality, the public disclosure of private information is all about controlling information about yourself so that other people don't know about it. Now Congress said, well, a common law, it has to be public. But if it's not public, the harm isn't enough to have a common law claim. So we'll take that and elevate it as the Supreme Court has said can be done because it's protecting the similar harm of usurping a person's information. The Senate report introducing the FDCPA emphasized that the act, quote, prohibits disclosing the consumer's personal affairs to third persons. Even the exceptions include entities. It includes credit bureaus. It includes attorneys, which presumably includes law firms. So they need to bring the mailers in-house? This business model doesn't work under the Debt Collection Act. They have to basically be, what, vertically integrated into all aspects of the debt collection? Respectfully, Congress's job isn't to make businesses work. It's not to make businesses productive. Could they hire a law firm that has access to the... They can. Attorneys, the creditor's attorneys, the debt collector's attorneys, and the consumer's debt as people that that information can be sent to. And where I was going with the control was, I believe I was answering part of Judge Phillips' questions or at least responding to it, is that Congress wanted this information, which it determined was sensitive because of reasons of being labeled as a debt fee, and making sure the debt collector controls this information and giving the consumer the right to control it itself. Once it's in the hands of a single third party, that control is lost. That person faces no liability unless it's under a common law tort. The debt collector has a difficult time facing liability for it, and the consumer's just kind of left holding the bag that they're now being called a debt fee. For example, what if this company is handling this for other debt collectors? What if it's made an error and now this person's information that they owe, debt A, is disclosed to tens, hundreds of thousands of people merely because they made a mistake? Well, by having that as a debt collector, sure, the debt collector can do the same thing, but in that instance they'd still be sued, but they have a potential bonafide error defense. We do these things to make sure these things don't happen, which is what Congress wanted to do. It wanted to find a way out if it was a harmless error. Simply passing the book on to somebody who has no FDCPA liability and the consumer has no real way to go after, simply usurps the control over that information. And how is the consumer harmed when it is essentially outsourcing to write a demand letter? I mean, there's no allegation here the information was, that the letter was abusive in some way or that there was false claims made. It does actually, Your Honor. Our other claims in the case are under section 1692E NGA1 as to the amount of the debt. The letters included numerous false representations. They disclosed a different type of loan than she had. They misrepresented the balance in every single letter. And was she harmed? Did she have any damages? Yes. She was harmed by all, there was other misrepresentations as well. So, for instance, their name is Professional Bureau of Collections of Maryland. Again, was she harmed? Did she suffer any damages? Yes. Some of the allegations that you make, you've tied them to common law torts that have an where you've told us what those are. She's been trying to pay these debts for over 10 years. She's offered payment plans to other debt collectors. And if they had sent her collection letters that she believed they were a scam, referenced the correct loan, referenced the correct balance. Is that from the declaration or from the complaint? That's from the declaration. Which we can go there, but I mean, you have an abusive discretion standard on that, right? On whether the court should accept, the district court should have considered that? Yes. Yes. As well as whether the district court should have, at the very least, granted her leave to amend. Based on the complaint, the harm alleged for the letters was confusion, basically. And the district court found that that really was a generalized grievance and it wasn't enough to establish concrete harm for purposes of standing. What's your response to the district court's conclusion there? Our response is that the district court should have considered, at this late stage of the case, affidavits. As this court has held, you can take a 12B1 motion on standing, you can consider affidavits of the parties, you can consider some outside documents, and you can even have an evidentiary hearing, all without converting the motion to dismiss to one for summary judgment. No, the declaration's pretty good, but if we don't have that, do you get over the transunion standing hurdle? It comes back to what can be inferred from the complaint. Somebody says something false, misleading in a letter, why would anybody pay that if they see that it's false, deceptive, and appears to be a scam? I mean, I think the inference can be there that somebody wouldn't make payment in those instances, especially when the balance increases over $33,000 in the first letter from the date of assignment from a company she's never heard of before until the date of the letter. I mean, that alone screams scam, scam, scam, because you think a reasonable collector would say, listen, there's a collection charge or there's interest. But of course, the second letter a month later, dated exactly a month late, no increase whatsoever. Yet the ones in three weeks after that, the balance magically increases by over $1,000. There's nothing in these letters that would get her to think you're legit and pay. Could the complaint have been, the First Amendment complaint, have been pled better? Yes, but the other thing is, after that complaint was filed, the Supreme Court issued its opinion in transunion. Right. You had the benefit of transunion to ask for leave to amend your complaint. And even now, your case was dismissed without prejudice. You could refile with basically the allegations set forth in the declaration, couldn't you? Yes, Your Honor, but that would be manifestly unjust to both Ms. Shields and FDCPA plaintiffs across the country. The maximum statutory recovery under the Act is $1,000. She's paid $400 to file, $70 to serve, and now she can't recover those costs. So now her maximum recovery is $530. I thought you were arguing that you could get actual damages also. You can, but you don't necessarily need actual damages. Could we seek actual damages potentially for the interest that accrued? I would think so, but that doesn't mean that she's going to necessarily get it, and that puts her into the harder decision on what she needs to do. And we think it encourages gamesmanship. Now, what incentive does any defendant have to file a motion to dismiss instead of filing an answer? Instead, they could wait like here. You can file a motion on standing at any time, simply make a facial attack, and then the plaintiffs left both responding, and if not, jumping the hurdle of not only Rule 15, but Rule 16 to see why. But I'll let you complain about you could have solved with a motion to amend. Is that right? If it were granted. It's not the strongest position to come into court and talk about how unfair this is to Ms. Shields when all you had to do was file a motion to amend. Well, we would have had the judge not enter judgment, so that's why we moved to reopen for that express reason. You had how long after transunion to do that before the judgment? We were in the middle of the briefing, so we could have moved in the middle of the briefing, but again, the FDCPA is a statute that gives a prevailing consumer their fees if they win. So one of the difficult positions as consumer attorneys that we're put in is there's a fine line between doing what's necessary in the file and what's reasonable and overworking the file. So it's very easy to get to the end of the case and have the judge deny the motion and said, why'd you waste your time filing a motion for leave? I denied the motion anyway. And now all the time that's been put into that, Ms. Shields isn't being compensated for. All right, counsel. I have one final question. If the latters were exactly the same, but they had been done internally by, I think, it's Professional Bureau of Collectors, would you have a claim? Not under 1692CB, but yes, she would still have her claims under 1692E and 1692GA1. Which all of those claims require showing of damages, right? Yes, and the damages here are interest that she approved on the debt. Because she would have paid, I know the other side takes issue with all the background information about her. But that's merely to put her state of mind, to show that she'd been trying to pay the debt in the past. And that she would have done so again, but for all the representations making her think it's a scam, it's from a prior domestic abuser, and things like that. Okay, thank you. Thank you, counsel. Thank you. All right, let's hear from Professional Bureau, Mr. Dickinson. Thank you, Your Honors, and may it please the Court. My name is Josh Dickinson, and I represent the Appellee Professional Bureau of Collections of Maryland, Inc. During my short time with you today, I hope to cover three points. One is to address the Hunstein case, which as the Chief Judge has noted, has an interesting history. Second, I would like to cover what I would refer to as the confusion about interest theory, and how the District Court correctly found that there was no standing for such a claim, because feigned confusion is not an injury under the TransUnion Authority. And the last point I'd like to cover is that Ms. Shields, what I would refer to as failed legal strategies before the District Court, and the District Court's refusal to give Ms. Shields a second and even a third bite at the litigation in Apple. I had intended to do that last, but I think I'm going to go to that one first, because it dovetails to what Judge Phillips was asking with respect to the motion for leave. It's important to understand the procedural history here. The claim was filed in this case on April 17, 2020. The first amended complaint wasn't filed until June 7, 2021. Now, the first amended complaint is what added the Hunstein claim, and the reason I suspect the Hunstein claim wasn't initially pledged is it hadn't been invented by the 11th Circuit yet. But once that Hunstein decision came out, plaintiff asked to amend. In response to that motion to amend that was granted, that included a Hunstein claim, my client filed a facial attack on the complaint, and alleged that under 12b1, that there was insufficient pleadings to confer standing on either of the legal theories to move forward. Now, here's what's key. The Hunstein decision was filed four days later on June 25, 2021. Plaintiff was well aware of the Hunstein decision, because they asked for an extension of time and noted that the, I apologize, I've used the wrong case name, the TransUnion case, which was cited four days later from the Supreme Court. And plaintiff was well aware of the TransUnion decision, because they asked for an extension of time to address it. Now, here's the key in response to Judge Phillips' question. They did not seek leave to amend their complaint to address the issues that were raised in TransUnion, and they had every right to do so, and I believe they had reasonable grounds to do so, given the change in the law that was presented by TransUnion. But they did not do that. They filed an opposition to our motion to dismiss on the merits. They tried to attach a declaration, which the district court would not allow, because this was a facial attack on the pleadings. We filed our reply, and they waited until the judge made a decision. And the judge entered an order dismissing the case without prejudice, saying that there was no standing and rejecting both the Hunstein claim and the confusion theory. Now, curiously, after the case had been dismissed, judgment had been entered, then they finally asked to amend their complaint, at which point the district court said, you can't amend the complaint in a case that's already been dismissed. Judgment's been entered. Sixteen days later, after the order denying their motion to amend the complaint, they finally file a motion to set aside the judgment and to essentially reopen the case. And they cite to Rules 59 and 60, but the district court correctly found that there was no basis. There was no basis for overturning the judgment and reopening the case. That is something this court reviews for abuse of discretion. With respect, I do not believe that the district court abused its discretion in any way. There was no intervening case law from the time that the initial order was entered until the request to reopen it. TransUnion had been around for months at this point. There's no new evidence that could have been offered. Yes, they pointed to the declaration, but they don't point to why anything in that declaration, some of which was decades-old information, couldn't have been included in the First Amendment complaint to begin with. So there was no new evidence to be considered, and there was no clear error that needed to be corrected. So with respect, we believe that the pleadings in this case are correctly bound by the First Amendment complaint. Now, let's talk about the Hunstein bite. Before you go there, I'd like your response or your best shot at distinguishing LuPia. Sure. Because that ties into Hunstein nicely, so why don't you give that a shot? Absolutely, Judge. This case is not LuPia, and I'm well aware that this panel is very familiar with the LuPia decision. And what we have to look at is opposing counsel wants this case to be LuPia, and so he's invented this category of just sort of invasion of privacy. But invasion of privacy is in itself a common law tort. It's a category of torts. It'd be the same as if you asked me, what are the elements of defamation? I would have to ask you, was it oral or written, in order to determine what the actual elements of libel or slander are. Same is true with respect to invasion of privacy. You have to drill down to which invasion of privacy common law analogous claim that you're looking at. LuPia was an intrusion upon seclusion. Now, what are the elements of that? One, defendant intentionally intruded upon the plaintiff's seclusion. That was present in LuPia. After the plaintiff from LuPia requested the call stop, another call was placed. Two, highly offensive to a reasonable person. And, judges, with respect, I think reasonable minds could disagree of whether one unanswered phone call is highly offensive. But at least you have a rationale, and this court has already found that it was highly offensive, and so it found that those two elements were present. Then, of course, the last element is a cause of anguish and suffering, which wasn't present, but this is when the court gets to what the Supreme Court has called elevation, what I would refer to as amplifying. Congress can amplify what already exists at the common law and provide for a remedy when perhaps one would not exist at the common law. So I think your opponent would say, well, we have the same thing with the situation here. You had publication to all of these people that was the same in kind, but it wasn't the same degree as required at common law. And so it's like LuPia, because there you had one intrusion on seclusion, and so it's lesser in degree, but it's the same in kind. I would respectfully disagree, Judge McHugh. These are different courts. It's not a question of degrees. These are different courts altogether. There is no possible intrusion upon seclusion under the facts of this case. No one called. No one sent a letter. You have to be disturbed in your ability to have seclusion. I'm not claiming that it's an intrusion on seclusion claim. Correct. That's not what they're arguing. Well, I was asked to distinguish LuPia, and that's what I was attempting to do. But I would agree with you, the closest common law analog to the facts of this case are public disclosure of private facts, also sometimes referred to as disclosure of private facts to a third party. That's the cause of action that we should be talking about. Can we agree we have private facts? What's that? Can we agree we have private facts? Yes. Okay. So the question is publication. Well, there's a little bit more to it than that. There's three elements to it. Publication is the first one. But you have to, and I'm reading from the Restatement Second of Tort. This is Section 652D for elements of public disclosure of private facts. You have to give publicity to a private matter of the plaintiff. Now, one of the problems I have at looking at the Restatement is the Supreme Court has now told us that we're not looking at what it meant now, right? We have to go back and look at it as of the time these claims arose. I think that's a fair point, but I also believe the Restatement has always sort of tried to encompass the common law, and I would also say I don't believe that there's a whole lot of disagreement as to what the elements of this particular tort are. There's certainly, in any disclosure of a private fact, publicity is a requirement. The second element is, much like Lupia, it has to be highly offensive to a reasonable person, and it can't be a legitimate public concern. I believe that two of those three elements are clearly missing. There is no publicity in this particular matter. Publicity, as defined by the Restatements, means that the matter is made public by communicating it to the public at large or to so many people that the matter must be regarded as substantially certain to become one of public knowledge. Clearly, we do not have this here by using a third-party vendor. The second issue that we have is a lack of this being highly offensive to an average person. It's difficult to conceive of how the use of a letter vendor could be considered highly offensive. Lots of entities and organizations use letter vendors. Politicians, charities, certainly debt collectors, governmental organizations. These third-party vendors are very efficient and good at mailing out large quantities of documents. It's difficult to conceive how, unlike the Lupia facts, where the offensiveness was calling after there was a request not to call anymore, here we simply have the use of a third-party letter vendor. Even if you don't like that, even if you think, maybe that shouldn't be the case, to refer to it as highly offensive, I think, would be a stretch. Ergo, we're missing two of the three elements of the closest common law analog. It's not closely related, as TransUnion has directed us, that it needs to be. The thing that the district court also got right, and which the Hunstein court got right, is with respect to whether a human being ever saw this. If you look at the pleadings, and I believe it's paragraphs 52 through 62, the only allegations that are alleged here is that there was a mail house used. And that's based upon information and belief. But there's not a pleading, unlike the Hunstein facts, where employees or persons within the letter vendor actually saw the material. As Judge Phillips said, it's highly unlikely that it would have occurred. But it wasn't even pled here. In Hunstein, it was pled. And even then, the Hunstein court rejected it. And in doing so, the Hunstein court cited to TransUnion in a way that I believe is appropriate to discuss here. This is on page 11 of the Hunstein opinion, and it's quoting the TransUnion opinion. Now, of course, Hunstein is not controlling on this court, but TransUnion is. So this is the Hunstein court quoting TransUnion. And on page 11 of the opinion, it says, and if, quote, misleading information sits in a company database, the plaintiff's harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. Close quote. Now, one paragraph down, the Hunstein court furthers quoting TransUnion and says, it added that the plaintiffs failed to prove that their private information, quote, was actually read and not merely possessed. With respect, I believe that that's controlling on this matter. The Supreme Court has said it's not enough just to send information somewhere, whether it's defamation or any other tort that requires some sort of publication or publicity. These facts, of course, are even more, it's a more difficult standard than what the court was looking at in TransUnion, which was a defamatory statement, which only requires a false statement to be made to one person. If you say something defamatory, it is only required that it be sent to one person. Whereas in this particular cause of action, it has to be publicized. And not only did the Supreme Court find that just putting some information into a database is insufficient for purposes of defamation, clearly that same reasoning should apply to this case, when there's nothing in the pleadings that would indicate that one human being ever read the information that was sent to the letter vendor. Last point I'll make on the letter vendor is the information that comprised, that was sent to the letter vendor, was then populated into the three letters that were sent to Ms. Shields. If this information was so private and so concerning, it was attached to the publicly filed document in this case. It wasn't redacted. It wasn't sought to be put under seal. They publicized the same information that they're claiming that we engage in third-party disclosure when they don't allege that a human being ever saw the letter in question, ever saw the information. I was going to say, aren't they entitled to a reasonable inference here? We only have a complaint. We don't have any evidence at this point. And so you want to infer from the complaint that it was all generated by computer and no human being ever saw it. But aren't we supposed to take the inference in favor of the non-movement here? Well, you can certainly make reasonable inferences. How hard is it to allege that a human being read it? They don't even suggest that a human read it. They suggest that it was simply sent to a mail house. A mail house is a thing. It's not a person. So I would suggest that I don't. Well, I think, you know, we can infer that a mail house can only act through persons. It can, but that doesn't mean that those persons are reviewing the information that is being sent to them. One computer sends information to another computer that populates it into a letter and then machinery puts it all together. I mean, we don't know any of that, but none of that was pledged, Your Honor. I mean, they had an obligation to come forward and plead. How has someone actually reviewed this material? You're out of time, but I'd like you to comment on the three letters and this confusion point. I mean, for me, if I got a letter saying I owed tens of thousands more dollars than I thought I did on top of hundreds of thousands of dollars, I guess I'd freak out a little bit. You know, and confusion may be too general, but can't we infer that this would be an intensely distressful letter to receive if you believed it was false? That wasn't pledged, Your Honor. There was no allegation of severe mental distress. They've alleged confusion, and numerous courts, most notably recently the Seventh Circuit has said the state of confusion isn't itself an injury. Confusion can lead to an injury if, for instance, one paid a debt that they shouldn't, or they took some action. But again, we have to come back to what Judge McHugh has said. There has to be a common law analog for this intangible injury. And here, the closest one, I suspect, would be fraud, but we don't even close to have any of the elements of fraud being pled here. There's no knowledge of falsity. There's no materiality.  So again, they have not met the standard that TransUnion has set forth, that they have to come forward with a common law analog that is closely related to the facts of this case before they can get to standing, Your Honor. All right, Counselor, your time has expired. We appreciate the arguments this morning. Thank you. And your excuse in the case shall be submitted.